522 So.2d 973 (1988)
In re the Matter of the Adoption.
Sherman M. BROD, Appellant/Attorney,
v.
The MATTER OF AN ADOPTION, Appellee.
No. 87-1488.
District Court of Appeal of Florida, Second District.
March 23, 1988.
*974 Sherman M. Brod, Tampa, pro se.
No appearance for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, Sherman M. Brod, is the attorney and intermediary for the adoptive parents in an adoption proceeding. He appeals the trial court order that requires him to repay to the adoptive parents sums advanced by them to him and paid by him out of his escrow account to the natural mother on behalf of the adoptive parents. The trial court order also held the adoption proceeding in abeyance pending proof that appellant complied with the repayment order.
In this rather unusual situation, we treat this appeal as a plenary appeal from an order in the nature of an order awarding or denying attorney's fees and/or costs. Hastings v. Osius, 104 So.2d 21 (Fla. 1958); Ruppel v. Gulf Winds Apartments, Inc., 508 So.2d 534 (Fla. 2d DCA 1987); Kucera v. Kucera, 330 So.2d 36 (Fla. 4th DCA 1975).
We reverse the order of the trial court. In doing so, we note that the trial judge was attempting to comply with the literal wording of the various applicable sections of chapter 63, Florida Statutes (1985). We conclude that it is impossible to comply with the apparent conflicting provisions of those sections when applied literally and still achieve the overall legislative intent. This is especially true where, as here, the adoptive parents and the natural mother arranged the adoption prior to the birth of the child.
The undisputed facts show that on or about August 6, 1986, the parents retained appellant to act for them in all matters necessary to a placement adoption. The expectant natural mother entered into an adoption agreement which provided in pertinent part:
WHEREAS, I understand that the adopting parent(s) desiring to adopt said child are agreeing to pay for rent, electricity, telephone, groceries and living expenses, beginning now and continuing for a period of four weeks after I have given birth to said child; and also, they are agreeing to pay medical bills, doctor's bills, hospital bills, as well as for maternity clothes and other lawful expenses... .
Appellant estimated his anticipated attorney's fees and the expectant mother's living and medical expenses, both prenatal and for thirty days postnatal. The parents delivered the estimated sum to appellant, who deposited that sum in his escrow account. Subsequently, appellant, on behalf of the parents, documented and paid the mother's living expenses and medical care with the parents' money from the escrow account.
The child was born and was placed with the adoptive parents with the consent of *975 HRS. Appellant filed a petition for adoption for the parents. Appellant prepared an affidavit for himself and for the parents, containing a full accounting of all receipts and disbursements, in accordance with section 63.132, Florida Statutes (1985). A copy was delivered to HRS prior to the final hearing allowing time for the HRS case worker to review the papers before the hearing. The court's copy was delivered to the trial judge immediately before the hearing.
The final hearing on the adoption was held on February 25, 1987. HRS filed its report and recommended that the adoption be granted. There was no opposition. However, the trial judge voiced concern about the propriety of the receipts and expenditures for living expenses and attorney's fees considered in regard to the applicable sections of chapter 63. The court took the matter under advisement and entered an order directing HRS to submit a supplemental report with recommendations.
HRS filed a supplemental report regarding the affidavits of receipts and expenditures on March 27, 1987. In that report, the HRS case worker reported that he had reviewed appellant's trust ledger and cancelled trust account checks. They showed total deposits of $17,366.92. The trust account checks to landlords, utility companies, drug stores, the hospital, the doctors, etc. totaled $14,856.92. A balance of $2,500.00 remained in appellant's trust account to be paid to him as his fee upon court approval. A $10.00 amount remained in the trust account to be sent to the Bureau of Vital Statistics with the final judgment. Appellant acted as intermediary and trust agent in arranging the adoptive placement of the child and in dispensing the parents' money.
In its report, HRS stated that chapter 63 allows the parents to pay the mother's actual living expenses. It noted that payment of those expenses through an intermediary's escrow account seems necessary if confidentiality between the biological mother and the adoptive parents is to be insured. The report did not criticize appellant's acts in that regard. The HRS report also indicated that, according to appellant's time records, he had spent 31.7 hours on the adoption through the day of the final hearing.
The trial judge entered the order on appeal and directed appellant to repay $6,814.67 to his clients, the adoptive parents. This included $2,500.00 that appellant was holding in his trust account as the remainder of his negotiated fee, plus an additional $4,314.67 that the parents had deposited with appellant and had been paid by appellant for the mother's living expenses. It further ordered the adoption held in abeyance.
The trial judge issued the order in reliance on the language of sections 63.097 and 63.212(4), Florida Statutes (1985)[1].
*976 Section 63.097 provided that "[a]ny fee, including those costs as set out in § 63.212(1)(d), over $500 paid to an intermediary other than actual, documented medical costs, court costs, and hospital costs must be approved by the court prior to payment to the intermediary."
In addition, section 63.212(4) provided that "[i]t is unlawful for any intermediary to charge any fee, including those costs as set out in paragraph (1)(d), over $500 other than for actual documented medical costs, court costs, and hospital costs unless such charges are approved by the court prior to payment to the intermediary."
Those statutory provisions considered in conjunction with the other provisions of chapter 63 relating to the permissible activities of an intermediary and prospective adoptive parents of an unborn child, do nothing but create a state of confusion.
Two portions of the HRS report to the trial judge reflect this confusion:
Chapter 63 allows the adoptive parents to pay the mother's actual living expenses. Those expenses are not defined. It seems reasonable to define food, rent, utilities, transportation, maternity clothes as living expenses. The Statutes do not address the "reasonableness" of any particular item.
Chapter 63 does not address the issue of payment of expenses through an Attorney's trust account. However, that seems to be required in order to insure confidentiality between the biological mother and the petitioners. Chapter 63 allows any Attorney licensed in Florida to place a child for adoption, i.e., to act as a intermediary. The Chapter does not address whether such an attorney can also act as a trust agent.
It is to be noted, as HRS points out, that while section 63.212(1)(d) allows payment by the adoptive parents of the actual prenatal care and living expenses, both prenatal and postnatal for thirty days, both sections 63.097 and 63.212(4) pertaining to intermediaries are silent as to living expenses. The 1987 amendments to those two sections have not alleviated that hiatus.
The HRS report further states:
The Vagueness of Chapter 63 regarding the specific issues expressed by the Court make interpretation tenuous at best. Questions about what is actual living expenses and what are reasonable costs in relation to these expenditures cannot be definitely answered by examining existing Statute. There is no reference to trust accounts, who will operate them or how. To date the Department of Health and Rehabilitative Services, District 6, has not formally addressed or interpreted the issues in contention. Over the years, expenditures have steadily risen. From time to time these expenditures and how they are paid have been questioned by both the Court and the Department. However, beyond noting the questionable reasonableness of these expenditures, no conclusive decision or ruling has been made.
To fully understand the problem faced by the trial judge in interpreting sections 63.097 and 63.212(4), it is helpful to analyze all of the pertinent sections of chapter 63 in sequence.
Section 63.022(2) sets forth the legislative intent of the act and its basic safeguards. One of those safeguards is that "[a]ll expenditures by intermediaries placing, and persons independently adopting, a minor are reported to the court and become a permanent record in the file of the adoption proceedings... ." § 63.022(2)(f), Fla. Stat. (1985).
Section 63.032(8) defines "intermediary:"
"Intermediary" means an attorney or physician who is licensed or authorized to practice in this state or, for the purpose of adoptive placements of children from out of state with citizens of this state, a child-placing agency licensed in another state that is qualified by the department.
Section 63.032(9) defines "placement:"
"To place" or "placement" means the process of giving or transferring of possession or custody, or arranging for the giving or transferring of possession or *977 custody, of a child by any person to another person for adoption.
Section 63.097, while entitled, "Approval of fees to intermediaries," is not only confusing but misleading because by its provisions it purports to restrict payments other than "fees:"
Any fee, including those costs as set out in § 63.212(1)(d), over $500 paid to an intermediary other than actual, documented medical costs, court costs, and hospital costs must be approved by the court prior to payment to the intermediary.
Because section 63.097 allows other actual documented medical, hospital and court costs to be paid without prior court approval but makes no reference to living expenses for the mother, which are allowed by section 63.212(1)(d), an apparent hiatus exists as to those expenses. Those types of expenses would normally occur only when the adoption is of an unborn child. Because sections 63.097 and 63.212(4) require prior court approval, the payment of living expenses by an intermediary becomes nothing short of impossible if the statutes are interpreted literally.
Section 63.102(1) provides that:
A proceeding for adoption shall be commenced by filing a petition entitled, "In the Matter of the Adoption of ____" in the circuit court. The person to be adopted shall be designated in the caption in the name by which he is to be known if the petition is granted. If the child is placed for adoption by an agency, any name by which the child was previously known shall not be disclosed in the petition, the notice of hearing, or the judgment of adoption.
Section 63.112(1)(a) through (c) provides that:
A sufficient number of copies of the petition for adoption shall be signed and verified by the petitioner and filed with the clerk of the court so that service may be made under subsection (4) and shall state:
(a) The date and place of birth of the person to be adopted, if known;
(b) The name to be given to the person to be adopted;
(c) The date petitioner acquired custody of the minor and the name of the person placing the minor. .. .
It is clear that chapter 63 does not contemplate the filing of a petition for adoption until after the child is born. Therefore, prior to the birth of the child, there exists no proceeding where an intermediary can obtain "prior court approval" of the expectant mother's living expenses. Another hiatus is thereby created.
Furthermore, section 63.132, entitled, "Report of expenditures and receipts," provides:
(1) Before the time set for the hearing, the petitioner and any intermediary shall each file two copies of an affidavit containing a full accounting of all disbursements and receipts of anything of value, including professional fees, made or agreed to be made by or on behalf of the petitioner and any intermediary in connection with the adoption. The clerk of the court shall forward a copy of the affidavit to the Department of Health and Rehabilitative Services. The report shall show any expenses or receipts incurred in connection with:
(a) The birth of the minor.
(b) The placement of the minor with the petitioner.
(c) The medical or hospital care received by the mother or by the minor during the mother's prenatal care and confinement.
(d) The living expenses of the natural mother.
(e) The services relating to the adoption or to the placement of the minor for adoption that were received by or on behalf of the petitioner, the intermediary, either natural parent, the minor, or any other person.
(2) The court may require such additional information as is deemed necessary.
(3) This section does not apply to an adoption by a stepparent whose spouse is a natural or adoptive parent of the child.
*978 Thus, it appears that section 63.132 contemplates adoptive parents and an intermediary, at least at times, reaching an agreement as to and/or paying professional fees. That section also contemplates payment of living expenses of the natural mother.
It is section 63.212, however, that applies the coup de grace to any semblance of coherence regarding the proper activities of an intermediary on behalf of adoptive parents in regard to payment of the natural mother's expenses. First, 63.212(1)(c) recognizes and legitimizes the role of an intermediary in the placement of a child for adoption when it provides that "[i]t is unlawful for any person:"
(c) Except the Department of Health and Rehabilitative Services, an agency, or an intermediary, to place or attempt to place within the state a child for adoption unless the child is placed with a relative within the third degree or with a stepparent. This prohibition, however, does not apply to a person who is placing or attempting to place a child for the purpose of adoption with the Department of Health and Rehabilitative Services or an agency or through an intermediary. (Emphasis supplied.)
To comprehend the clear import of that approval of the role of an intermediary, we must refer back to the definition of "placement" as the process of arranging for the giving or transferring of the possession or custody of a child.
Section 63.212(1)(d) then makes it unlawful:
(d) To sell or surrender, or to arrange for the sale or surrender of, a child to another person for money or anything of value to receive such minor child for such payment or thing of value. If a child is being adopted by a relative within the third degree or by a stepparent, or is being adopted through the Department of Health and Rehabilitative Services, an agency, or an intermediary, nothing herein shall be construed as prohibiting the person who is contemplating adopting the child from paying the actual living and medical expenses of such mother for a reasonable time, not to exceed 30 days, after the birth of the child. (Emphasis supplied.)
Section 63.212(4) then provides:
(4) It is unlawful for any intermediary to charge any fee, including those costs as set out in paragraph (1)(d), over $500 other than for actual documented medical costs, court costs, and hospital costs unless such charges are approved by the court prior to payment to the intermediary.
A literal reading of those subsections would allow a prospective parent, adopting through an intermediary, to pay actual living expenses of an expectant mother. However, they also seem to state by their literal terms that the intermediary cannot pay such expenses on behalf of the adoptive parents even using a trust or escrow account as appellant did here. As we have already noted, prior court approval is not possible in these circumstances involving an unborn child. As HRS pointed out in its report to the trial judge, that literal interpretation seems to destroy the very purpose of an intermediary. We cannot conclude that the legislature envisioned such a result. We, therefore, interpret the legislative intent from a consideration of chapter 63, as it existed in 1985, as a whole. When we do that, we conclude that an intermediary may properly pay on behalf of adoptive parents the actual documented living expenses of a mother[2] (not to exceed thirty days postnatal), as well as medical, hospital and court costs.
In addition, we conclude that there is no limitation imposed by chapter 63 that restricts the amount of money an intermediary may receive from adoptive parents to be deposited in an escrow account or trust account of the intermediary for the payment of anticipated fees and expenses in connection with the birth of the child and its subsequent adoption. The intermediary would be restricted in the amount of any *979 preliminary fee he could pay himself out of that escrow account[3]. However, subject to court approval and proper justification, there is no limit on the professional fee that might finally be authorized. It would seem proper that the court in an adoption proceeding should use the same standard as to reasonableness and justification for approval of those fees as is applied in other fee-awarding proceedings. One of the elements to consider is the amount of the fee agreed to by the parties. This is contemplated by section 63.132(1). Assuming the agreed upon amount to be reasonable and justified, it should be approved.
In this case, we conclude that, as the HRS report shows, appellant's agreed-to fee of $3,000.00 was both reasonable under the circumstances and justified by the quantity and quality of services performed.
We, therefore, reverse the order of the trial court. Upon remand, the trial judge shall approve appellant's fee as discussed herein. HRS having reported no reason why they should be considered to be unreasonable, the trial judge shall also approve the other documented living expenses paid by appellant on behalf of the adoptive parents to or for the benefit of the expectant mother, not to exceed thirty days postnatal. If the adoption is otherwise in order, the trial judge shall forthwith render the final judgment of adoption.
Reversed and remanded.
THREADGILL and PARKER, JJ., concur.
NOTES
[1] The 1987 legislature amended those sections to provide:

63.097 Approval of fees to intermediaries. Any fee, including intermediary or attorney fees over $1,000 and those costs as set out in § 63.212(1)(d) over $1,500, paid to an intermediary other than actual, documented medical costs, court costs, and hospital costs must be approved by the court prior to assessment of the fee by the intermediary and upon a showing of justification for the larger fee. Section 63.212(4) now provides:
It is unlawful for any intermediary to charge any fee, including intermediary or attorney fees over $1,000 and those costs as set out in paragraph (1)(d) over $1,500, other than for actual documented medical costs, court costs, and hospital costs unless such fee is approved by the court prior to the assessment of the fee by the intermediary and upon a showing of justification for the larger fee.
While the amendments are helpful, they are far from perfect. Under the amendment, an intermediary apparently may now pay living expenses in some amount. It is difficult to determine what that amount may be since the $1,500 figure refers to all costs set out in paragraph (1)(d), which includes both prenatal and postnatal living expenses as well as prenatal care and postnatal medical expenses. It may be the intention to allow payment of all actual documented medical costs, court costs and hospital costs, and allow the $1,500 to apply only to living expenses. The "prior court approval" restriction is still unworkable in the case of the prospective adoption of an unborn child. In addition, by use of the term "assessment of the fee," the amendment may have implicitly approved use of escrow or trust accounts by an intermediary to hold such funds prior to their actual "assessment" as a fee by the intermediary after court approval.
[2] See Footnote 1 for comment on 1987 amendment as to those living expenses.
[3] $500 in 1985, $1,000 after 1987 amendment.